IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Kenneth Cody Lock, II, n/k/a Pucillo, | ) |
| Plaintiff, | ) |
| v. | ) No.  1:19-cv-285-TWP-DML |
| National Credit Systems, Inc., a Georgia corporation, | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF MOTION TO AMEND OR ALTER JUDGMENT**

Plaintiff, Kenneth Cody Lock, II, n/k/a Pucillo ("Pucillo"), hereby submits the following memorandum of law in support of his motion to alter or amend, pursuant to Fed.R.Civ.P. Rules 59(e) and 60(b)(1-6), this Court's order dismissing his Amened Complaint for lack of jurisdiction and denying as moot the parties' Cross-Motions for Summary Judgment (Dkt. 55):

**INTRODUCTION**

Defendant, National Credit Systems, Inc. ("NCS") sent Mr. Pucillo two letters in an attempt to collect a consumer debt which had been discharged in his bankruptcy. His Amended Complaint alleged Defendant's collection actions destroyed the fresh start to which the bankruptcy code entitled him, and that he had been confused about the status of his bankruptcy and the impact of the letters on his credit, see, Dkt. 45-1 at ¶¶7-8; Dkt. 24 at ¶ 11. This court found that this was "not enough to support a concrete injury", see, Dkt. 55 at p. 7. In so holding, however, this Court relied primarily on inapposite cases, which alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et

seq., ("FDCPA") involving nuanced ambiguities in language, not the sort of straight-forward violations that occurred here: the destruction of Mr. Pucillo's fresh start, as guaranteed by Congress in enacting the Bankruptcy Code, as well as an invasion of his right to privacy, as conferred Congress in enacting the FDCPA, see, 15 U.S.C. §1692(a). Mr. Pucillo alleged a concrete and particularized injury-in-fact and has Article III standing to bring his claims under the FDCPA; thus he requests that this Court alter or amend its Entry, pursuant to Fed.R.Civ.P. Rules 59(e) and 60(b)(1-6), dismissing his complaint.

## ARGUMENT

Fed.R.Civ.P. Rule 59(e) allows the movant to bring to the Court's attention manifest errors of law or fact or newly discovered evidence, see, Adams v. City of Indianapolis, 2011 U.S. Dist. LEXIS 48765, at [*2] (S.D. Ind. 2011), citing, United States v. Resnick, 594 F.3d 562, 568 (7th Cir. 2010). Similarly, pursuant to Fed.R.Civ.P. Rule 60(b)(1-6), a Court may relieve a party from a final judgment or order for multiple reasons, including mistake, inadvertence, surprise, or excusable neglect, or any other reason that justifies relief. This is especially applicable here because Plaintiff was not afforded the opportunity to address the recent Article III standing case decisions upon which this Court relied.

Here, this Court, in denying the parties' cross-motions for summary judgment as moot and dismissing this matter for lack of jurisdiction, committed manifest errors of law or fact, and/or mistakenly found that Mr. Pucillo's "confusion, stress, concern, and fear" were not enough to support a concrete injury sufficient for Article III standing, see, Dkt. 55 at p. 7. More specifically, the recent Seventh Circuit authority upon which this Court

relied in its holding, Larkin v. Fin. Sys. of Green Bay, 982 F.3d 1060, 1066 (7th Cir. 2020); Nettles v. Midland Funding LLC, 983 F.3d 896, 900 (7th Cir. 2020); and Gunn v. Thrasher, Buschmann & Voelckel, 982 F.3d 1069, 1071 (7th Cir. 2020)(see, Dkt. 55 at pp. 5-6) -- all failed to do more than allege violations of the FDCPA without showing how the violations harmed the consumer plaintiffs. Here, Mr. Pucillo's Amended Complaint (Dkt. 24) set forth that his fresh start was destroyed by NCS's false collection letter, and, on summary judgment, he testified that NCS's threat -- that it was already negatively reporting the debt on his credit report, and payment of a discharged debt may improve his credit -- upset, alarmed, concerned, and even scared him, see, 45-1. Unlike the recent cases on Article III standing cited by this Court, which involved what might be considered bare procedural violations based on nuanced ambiguities in collection letters, the straight-forward privacy violations at issue here go directly to the harms Congress intended to prevent when it enacted the FDCPA.

**I.      NCS's Violations Of The FDCPA Constitute An Injury-In-Fact That Is Both Concrete And Particularized.**

To establish an injury-in-fact, a plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized"; this invasion must be "actual and imminent, not conjectural or hypothetical", see, Larkin, 982 F.3d at 1064, citing, Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1548, 194 L.Ed.2d 635 (2016). A concrete injury must actually exist – it cannot be abstract, although concrete does not necessarily mean tangible, as intangible injuries can satisfy the concreteness requirement. Id.; see also, Larkin, 982 F.3d at 1064, citing, Spokeo, 136 S.Ct. at 1548-49. A particularized injury must affect the plaintiff in personal and individual way, *see*, Larkin, 982 F.3d at 1064.

This Court, in finding that Mr. Pucillo failed to allege that he had been harmed in a way that is sufficient for Article III standing, relied on entirely distinguishable authority. Pennell v. Global Trust Management, 2021 U.S. App. LEXIS 7126 (7th Cir. March 11, 2021)(Dkt. 55 at p. 5), for example, found that a consumer who alleged that a collector communicated with her directly in an attempt to collect a debt, after she had refused to pay a debt and told her creditor that she was represented by counsel as to the debt, in violation of §1692c(c) and §1692c(a)(2) of the FDCPA), did not sufficiently allege that she had been harmed for purposes of Article III standing. Pennell, however, is distinguishable in that it did not involve a debt discharged in bankruptcy, as does Mr. Pucillo's Complaint.

Moreover, in Pennell the Seventh Circuit failed to recognize that the plaintiff there had, in fact, alleged *facts* relating to an invasion of her privacy -- a harm that has been repeatedly acknowledge by the Seventh Circuit as sufficient for Article III standing, see, Gadelhak v. AT&T Servs., 950 F.3d 458, 461-63 (7th Cir. 2019)(unwanted and unlawful text messages, prohibited by the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), constitute an invasion of privacy recognized by Congress and sufficient for Article III Standing); Fox v. Dakkota Integrated Systems, 980 F.3d 1146, 1154-55 (7th Cir. 2020)(recognizing, in a case under Illinois' Biometric Information Privacy Act, 740 ILCS 14/1 et seq. ("BIPA"), that the unlawful retention of a person's biometric data inflicts a privacy injury that is concrete and particularized). Although the Court in Pennell acknowledged that an invasion of privacy may be enough to assert a harm for Article III standing, see, Pennell, 2021 U.S. App. LEXIS 7126 at [*6]-[*7], it ultimately determined that Ms. Pennell did not explicitly allege an invasion of privacy in her complaint.

Consumers experiencing intangible, non-monetary harms, including violations of privacy, absolutely have Article III standing, so long as it is a harm identified by Congress. As the Supreme Court found in Spokeo, when evaluating whether claims made pursuant to the Fair Credit Reporting Act were sufficiently "concrete" for purposes of Article III:

> "Concrete" is not, however, necessarily synonymous with "tangible." Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete.
>
> In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles. Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts… In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important.

See, Spokeo, 136 S.Ct. at 1549 (internal citations omitted).

Invasions of privacy are at the heart of statutes such as the TCPA and Illinois' BIPA statute – invasion of an individual's privacy is a harm traditionally recognized at common law, see, e.g., Gadelhak, 950 F.3d at 462 ("In passing the [TCPA], Congress decided that automated telemarketing can pose this same type of harm to privacy interests."); Fox, 980 F.3d at 1150 ("The [Illinois] General Assembly [in the legislative findings portion of BIPA] found that the public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.).

Likewise, in enacting the FDCPA, Congress explicitly recognized that abusive,

unlawful collection practices contribute significantly to invasions of privacy:

> **(a) Abusive practices**
> There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to **invasions of individual privacy**.

See, 15 U.S.C. §1692(a) (emphasis added). In fact, collection communications that would be a "detriment to [a consumer's] debt-management choices", including whether interest was accruing on a debt at issue, have been held to state a harm sufficient for Article III standing, and sufficient to withstand dismissal, see, Bazile v. Fin. Sys. of Green Bay, 983 F.3d 274, 281 (7th Cir. 2020).

Congress thus addressed these invasions of individual consumer's privacy by debt collectors when it enacted the FDCPA, including, § 1692c, which limits the ways in which a collector may contact a consumer or third-parties. For example, a debt collector may not contact a consumer who has refused to pay a debt, see, 15 U.S.C. § 1692c(c) or communicate directly with a consumer who is represented by counsel, see, 15 U.S.C. § 1692c(a)(2).[1] Protection of consumer privacy was clearly and unequivocally one of Congress's chief goals in enacting the FDCPA.

Like the plaintiffs in Gadelhak, and Fox, the allegations of Mr. Pucillo's complaint -- that NCS violated §1692c(c) by contacting him when he had clearly and unequivocally

---

1. Other provisions of the FDCPA also seek to protect consumers from invasion of privacy, see, e.g., §1692d(3) of the FDCPA, which prohibits the publication of a list of consumers who allegedly refuse to pay debts; § 1692d(4) of the FDCPA, which prohibits the advertisement for sale of any debt to coerce payment of the debt; §1692e(8) of the FDCPA, which prohibits communicating or threatening to communicate to any person credit information which is false or should be known to be false; §1692f(7) of the FDCPA, which prohibits communicating with a consumer regarding a debt by postcard; and § 1692f(8) of the FDCPA, which prohibits using language on an envelope which would indicate that the sender is in the debt collection business.

refused to pay a debt and had demanded that collection communications cease, by filing bankruptcy -- specifically set forth *facts* that his privacy was invaded, despite not having used the magic words "invasion of privacy". And clearly, those facts show that Defendant NCS's collection actions invaded Mr. Pucillo's privacy and destroyed the fresh start to which he is entitled following his bankruptcy – both of which are concrete and particularized injuries-in-fact sufficient for Article III standing.

Moreover, in his Amended Complaint, Mr. Pucillo sets forth that NCS "destroyed his fresh start" by contacting him directly, twice, in connection with the collection of a discharged debt, see, Dkt. 24 at ¶ 11. The "fresh start" has long been recognized as the main legislative purpose behind the enactment of the Bankruptcy Code. One of the primary purposes of the bankruptcy act is to give "to the honest but unfortunate debtor who surrenders for distribution the property which he owns *at the time of bankruptcy*, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.", see, Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S. Ct. 695, 699 (1934); see also, Williams v. United States Fid. & Guar. Co., 236 U.S. 549, 554-55, 35 S. Ct. 289, 290 (1915)("It is the purpose of the Bankrupt Act to convert the assets of the bankrupt into cash for distribution among creditors and then to relieve the honest debtor from the weight of oppressive indebtedness and *permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.*)(emphasis added). Thus, the "fresh start" Congress sought to provide to consumers in bankruptcy, over a century ago, encompasses a right to privacy from collection communications regarding discharged debts, so that an unencumbered consumer can look forward towards his financial future.

In support of his motion for summary judgment, Mr. Pucillo provided sworn testimony that Defendants' letters not only "confused and concerned" him, as to whether the debt had been properly discharged, but that he "feared" that if he had not been properly included, it would impact his credit rating. He stated that it "scared" him, "alarmed and upset him", and also that it "destroyed his fresh start", see, Dkt. 45-1, at ¶¶ 7-8.

These harms -- being scared, alarmed, and upset by an unlawful collection letter sent despite the fact that he had refused to pay the debt, as is his right pursuant to §1692c(c) of the FDCPA -- constituted an injury-in-fact which is both concrete (i.e., it actually happened) and particularized (it happened to Mr. Pucillo). Courts within the Seventh Circuit, moreover, have long recognized that emotional stress damages are clearly recoverable under the FDCPA, see, e.g., Cannon v. SC & Assocs., 2009 U.S. Dist. LEXIS 73433, at [*6] (N.D. Ill. 2009)("damages as outlined above, including personal humiliation, embarrassment, sleeplessness, depression and mental anguish or emotional stress need not be proved by expert testimony and can be sustained by the consumer himself"), citing, In Re: Belile, 209 B.R. 658 (Bankr. E.D.Pa. 1997) (awarding emotional distress damages based on a plaintiff's testimony); see also, McCollough v. Johnson Rodenburg & Lauinger, LLC, 637 F.3d 939, 957-58 (9th Cir. 2011)(upholding jury award of $250,000 for emotional distress damages to a medically vulnerable consumer against whom suit was filed and unreasonably pursued on a time-barred debt); Crossley v Lieberman, 90 B.R. 682 (E.D.Pa 1988), aff'd, 868 F.2d 566 (3rd. Cir. 1989) (emotional distress assessed at $1,000 for debt collector's violation of the FDCPA based on the plaintiff's testimony), Southern Siding Company, Inc, v.

Raymond, 703 So. 2d 44 (La. App., 1st Cir. 1997)(actual damages of $5,000 awarded to FDCPA plaintiffs for undue stress, anxiety and sleeplessness and physical injury in the form of depression as result of threatening letter based on plaintiffs' testimony); and Vil v. Poteau (In re Poteau), 2016 Bankr. LEXIS 4095 at [*58] (Bankr. D.Mass. 2016) (awarding $5,000 for emotional distress, in addition to legal fees, regarding a collector's violation of the discharge injunction).

**II. Larkin, Nettles, and Gunn All Involved Nuanced Ambiguities Regarding Alleged Violations Of The FDCPA, And The Plaintiffs In Those Cases Failed To Allege How They Were Harmed.**

The alleged of violations of the FDCPA in Larkin, Nettles and Gunn are simply not the same as the destruction of Mr. Pucillo's peace of mind and fresh start after his bankruptcy at issue here. In Larkin, the consumer plaintiffs received collection letters that contained the statement: "You want to be worthy of the faith put in you by your creditor ... We are interested in you preserving a good credit rating with the above creditor.", see, Larkin, 982 F.3d at 1063. While the plaintiffs alleged that the phrase was false, deceptive, or misleading, or otherwise unfair or unconscionable, in violation of § 1692e and § 1692f of the FDCPA, neither consumers' complaints, nor any of the dismissal briefs or appellate briefs "made [any] effort to articulate an injury of any kind, either tangible or intangible, from the violation", see, Larkin, 982 F.3d at 1066.

Similarly, in Nettles, a consumer alleged that a collector violated §§ 1692e and 1692f when it overstated the amount of a debt in a collection letter, but failed to state how (if at all) this overstatement harmed her, admitting on appeal that it did not affect her at all, see, Nettles, 983 F.3d at 900. Finally, in Gunn, the consumer alleged that a letter attempting to collect a debt on behalf of a home owners' association threatened

9

foreclosure when, in fact, it only intended to file a lawsuit for breach or contract, in violation of §1692e of the FDCPA, see, Gunn, 982 F.3d at 1070. The plaintiffs in Gunn, however, failed to allege any harm at all in their complaint and argued, in supplemental briefing on Article III requested by the Court after oral argument, that they had been harmed by the letter only because it "annoyed or intimidated" them, see, Gunn, 982 F.3d at 1071. The Seventh Circuit specifically noted that "annoyance and intimidation", compared to the harm of invasion of privacy for which Article III standing was sufficient in Gadelhak, is not enough, see, Id. Unlike Larkin, Nettles, and Gunn, Mr. Pucillo alleged that NCS violated his right to be left alone, pursuant to §1692c(c) of the FDCPA, regarding a debt which had been discharged in his bankruptcy and that his right to a fresh start after his bankruptcy had been destroyed; his allegations against NCS involved a direct harm to his privacy and his right to a fresh start; he has Article III standing to bring his claims.

**III.    NCS's Illusory Promise To Stop Communicating Negative Credit Information To Third Parties – Despite The Fact That It Could Not Have Been Lawfully Reported -- Was A Threat To Mr. Pucillo's Privacy, And It Harmed Him In A Way That Congress Sought To Prevent.**

Section 1692e, prohibits a collector from communicating false information regarding a debt, including communications made both directly to the consumer, as well as communications to third parties, such as credit reporting agencies, see, 15 U.S.C. §1692e, 15 U.S.C. §1692e(8). Moreover, §1692e(5) specifically prohibits debt collectors from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken", see, 15 U.S.C. §1692e(5). Moreover, false/illusory promises regarding credit reporting have been held to violate the FDCPA, see, e.g., Pittman v. Jefferson Capital Sys., 2017 U.S. Dist. LEXIS 38484, at [*9] (S.D. Ind. 2017)(Dinsmore, J.); see

also, Gonzales v. Arrow Financial Services, 660 F.3d 1055, 1062-63 (9th Cir. 2011)(holding that the nearly identical phrase: "Upon receipt of the settlement amount and clearance of funds, and *if we are reporting the account, the appropriate credit bureaus will be notified that this account has been settled*", implied to an unsophisticated consumer that "under some set of circumstances applicable to the recipient, [the debt collector] could and would report the account", which the Court found to be materially misleading, despite the fact that it used conditional language.).

Here, Defendant NCS's promise to "update credit data it may have been reporting" told Mr. Pucillo that, under some set of circumstances, it could or perhaps already had placed a negative mark on his credit regarding a debt that had been discharged in bankruptcy. No credit report had occurred, but Mr. Pucillo did not know this when he received both of NCS's letters, and he was upset and scared by the possibility that his credit reputation would be impacted, see, Dkt. 45-1 at ¶¶7, 8. This is particularly concerning for any consumer who has had to file bankruptcy and is attempting to re-build their credit. NCS's statement told Mr. Pucillo that false information about him had potentially been shared with third-parties via credit reporting, thus also creating an invasion of privacy and/or the threat of an invasion of privacy. Mr. Pucillo's claim that Defendant NCS violated §1692e, by threatening to use unlawful, false credit reporting to a third party, involved an invasion of privacy. This harmed Mr. Pucillo, a harm that resulted in a concrete and particularized injury-in-fact, as recognized by the Seventh Circuit, see, Gadelhak, 950 F.3d at 461-63, Fox, 980 F.3d at 1154-55. Attempting to collect debts subject to or discharged by bankruptcy, moreover, have been long-held by the Seventh Circuit to constitute concrete, material harms, see,

Randolph v. IMBS, 368 F.3d 726, 729-33 (7th Cir. 2004). Mr. Pucillo has Article III standing.

## CONCLUSION

Plaintiff Pucillo set forth facts in his Complaint, and in support of his cross motion for summary judgment, which unequivocally showed that his right to a fresh start in filing bankruptcy had been destroyed by Defendant NCS's unlawful collection actions and that his privacy had been invaded. As such, he has, in fact, suffered an injury-in-fact that was both concrete and particularized and, thus, he has Article III standing. This Court's dismissal for lack of standing fails to acknowledge that protecting consumers from such invasions of privacy was one of Congress' main goals in enacting the FDCPA. This Court should alter or amend, or grant Plaintiff relief from, its dismissal this matter for lack of jurisdiction (Dkt. 55) and, instead, grant summary judgment in favor of Plaintiff on the basis of Defendant's unlawful collection actions.

    Respectfully submitted,

    Kenneth Cody Lock, II, n/k/a Pucillo,

    By: /s/ David J. Philipps
    One of Plaintiff's Attorneys

Dated: April 13, 2021

David J. Philipps    (Ill. Bar No. 06196285)
Mary E. Philipps    (Ill. Bar No. 06197113)
Angie K. Robertson (Ill. Bar No. 06302858)
Philipps & Philipps, Ltd.
9760 S. Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com
mephilipps@aol.com
angie@philippslegal.com

John T. Steinkamp
John Steinkamp & Associates
5214 S. East Street
Suite D-1
Indianapolis, IN 46227
(317) 780-8300
(317) 217-1320 (FAX)
john@johnsteinkampandassociates

## **CERTIFICATE OF SERVICE**

      I, David J. Philipps, certify that on April 13, 2021, a copy of the foregoing **Plaintiff's Motion to Alter or Amend Judgement**, was filed electronically**.**  was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Katrina M. Demarte                        kdemarte@demartelaw.com
Demarte Law PLLC
39555 Orchard Hill Place
Suite 600 PMB 6338
Novi, Michigan 48375


John T. Steinkamp                        john@johnsteinkampandassociates.com
John Steinkamp & Associates
5214 S. East Street
Suite D1
Indianapolis, Indiana 46227


<u>/s/ David J. Philipps</u>
David J. Philipps    (Ill. Bar No. 06196285)
Philipps & Philipps, Ltd.
9760 S. Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com